## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| _____ | X |  |
| NEW JERSEY MANUFACTURERS INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : : | **JURY TRIAL DEMANDED** |
| ARBELLA MUTUAL INSURANCE COMPANY, | : : : | |
| Defendant. | : : | |
| _____ | X | |

### COMPLAINT

Plaintiff, New Jersey Manufacturers Insurance Company ("NJM" or "Plaintiff"), through its undersigned counsel Saul Ewing, LLP and Harris Beach Murtha Cullina, PLLC for its Complaint against Defendant, Arbella Mutual Insurance Company ("Arbella" or "Defendant"), states as follows:

### INTRODUCTION

1.     This action arises from Defendant's willful copyright infringement of two of NJM's commercial advertisements, including the audiovisual works and underlying scripts, as well as Defendant's infringement of NJM's trademarks, unfair competition, and false designation of origin.

2.     NJM is a highly regarded insurer that has developed substantial goodwill in its brand and trademarks NO JINGLES OR MASCOTS JUST GREAT INSURANCE℠ (The "No Jingles or Mascots Mark") through years of providing high-quality customer first insurance services and through distinctive advertising.

3.      During or around April 2021, NJM developed and launched an advertising campaign reflecting its "substance over style" philosophy, the tagline for which was and is NO JINGLES OR MASCOTS JUST GREAT INSURANCE℠ (the "NO JINGLES OR MASCOTS Campaign")[1].

4.      Defendant is also an insurer that competes directly with NJM. Defendant developed and copied protectable elements of NJM's NO JINGLES OR MASCOTS Campaign (the "Infringing Campaign") without NJM's authorization in an effort to unfairly compete with NJM and to cause harm to NJM for Defendant's benefit.

5.      NJM has commenced this action to protect NJM's intellectual property and proprietary rights, including NJM's copyright, trademark, and trade dress rights, and to preclude Defendant from continuing to unfairly compete with NJM. NJM submits the Court should enjoin Defendant from continuing to wrongfully use NJM's rights and from continuing to unfairly compete with NJM, among other tortious conduct.

## THE PARTIES

6.      NJM is a New Jersey corporation, with its principal place of business at 301 Sullivan Way, West Trenton, New Jersey, 08628.

7.      Defendant is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business at 1100 Crown Colony Drive, Quincy, Massachusetts, 02269.

---

[1]  NJM's "No Jingles or Mascots" campaign has garnered praise in advertising media, including a feature in Adweek. *See* https://www.adweek.com/creativity/heres-why-you-wont-find-talking-animals-or-irritating-jingles-in-njm-insurances-advertising/

57397314.2 03/02/2026

## JURISDICTION AND VENUE

8.    This Court has original subject matter jurisdiction over Plaintiff's copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), because those claims arise under the Copyright Act, 17 U.S.C. § 101 et seq.

9.    This Court has original subject matter jurisdiction over Plaintiff's federal trademark infringement and unfair competition claims pursuant to the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and 28 U.S.C. §§ 1331 and 1338(a).

10.    This Court has supplemental jurisdiction over the claims in this Complaint which arise under state law and common law claims pursuant to 28 U.S.C. § 1367(a), because the state and common law claims are so related to the federal claims that they form part of the same case and/or controversy and derive from a common nucleus of operative facts.

11.    This Court has personal jurisdiction over Defendant because Defendant maintains a physical location in the State of Connecticut and conducts continuous and systematic business activities in Connecticut, including operating a location within Connecticut and purposefully directing marketing and advertising activities to Connecticut residents.

12.    Defendant has further availed itself of the privilege of conducting business in Connecticut by intentionally targeting Connecticut residents through Defendant's marketing and advertising activities. By virtue of these actions, Defendant has purposefully availed itself of the privilege of conducting business in Connecticut and in this District and is subject to jurisdiction in this Court.

13.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1391(c)(2) because Defendant is a corporation that resides in this District for venue purposes, and because a substantial part of the events giving rise to Plaintiff's trademark and unfair competition claims occurred in this District.  Venue is also proper for Plaintiff's copyright

infringement claims pursuant to 28 U.S.C. § 1400(a) because Defendant resides or may be found in this District, by maintaining a physical location in Connecticut and is subject to personal jurisdiction here.

**FACTUAL BACKGROUND**

### I.    THE NJM TRADEMARKS

14.    Founded in 1913, NJM provides personal and commercial insurance services, including automobile, homeowners, renters, and business insurance, to individuals and businesses in the Mid-Atlantic region. NJM operates for the exclusive benefit of its policyholders and has developed a strong reputation for customer service, claims handling, and overall customer satisfaction. Through more than a century of continuous operation, NJM has built substantial goodwill and consumer recognition in its name, trademarks, and advertising.

15.    In addition to its common law and equitable rights, NJM owns enforceable rights in and to a portfolio of trademarks, including federal trademark registrations and pending applications on the Principal Register of the United States Patent and Trademark Office (USPTO). These include, without limitation, U.S. Application Serial No. 99443154 in international class 36 for "Insurance claims administration; Insurance services, namely, writing property and casualty insurance; Insurance underwriting services for all types of insurance" (the NO JINGLES OR MASCOTS Mark). The NO JINGLES OR MASCOTS Mark was approved for publication and published for opposition by the USPTO.

### II.    NJM'S NO JINGLES OR MASCOTS CAMPAIGN

16.    NJM launched its NO JINGLES OR MASCOTS Campaign at least as early as April 2021 as a bold campaign that satirizes insurance industry cliches while highlighting NJM as a straightforward, customer-focused alternative, emphasizing NJM's customer-first service, delivered without celebrity endorsements, jingles, or other advertising gimmicks.

4

17.    NJM has continuously used its NO JINGLES OR MASCOTS Mark in United States commerce since at least April 2021 in connection with insurance related services in Class 36. NJM has prominently used its NO JINGLES OR MASCOTS Mark as a tagline and source identifier for NJM's insurance services.

18.    The NO JINGLES OR MASCOTS Campaign includes a series of short commercial spots and advertisements, including the "Narwhal/Reception Ad" and the "Keytar Ad" which collectively convey a substance-over-style philosophy: customer-first service without reliance on celebrity, catchy tunes, or animated characters. The commercial spots in the NO JINGLES OR MASCOTS Campaign feature distinctive dry, observational humor delivered through understated, character-driven scenarios that juxtapose outlandish, zany characters with calm, composed business professionals.

19.    The zany characters embody chaotic, gimmicky marketing, while the NJM personnel remain unflappable, professional, and focused, speaking plainly and acting with quiet competence, as follows:

> *Setup (Cliché Parody): Open with absurd, disruptive scenarios featuring hypothetical "gimmicky" insurance tropes—a bumbling mascot causing chaos (e.g., a magician "Hugh-dini" botching tricks, or a literal crater in the road symbolizing empty promises), a cheesy jingle interrupting daily life, or over-the-top hype that fails to deliver. These highlight everyday problems like car accidents, home damage, or claims hassles exaggerated by flashy but useless marketing.*
>
> *Punchline/Resolution: Cut to calm NJM representatives or simple visuals of efficient service (e.g., quick claims processing, honest advice), resolving the chaos. Voiceover or on-screen text delivers the tagline: "NJM: NO JINGLES OR MASCOTS. Just Great Insurance." The meta-commentary reinforces that NJM's real value—95% renewal rates, low complaints, mutual ownership—makes gimmicks unnecessary, as "greatness is proven, not hyped."*

20.    This consistent contrast between exaggerated, attention-seeking antics on one side and NJM's cool, steady, customer-first demeanor on the other, visually and tonally reinforces

5

NJM's trade dress and communicates to consumers that NJM provides straightforward, dependable insurance service that rejects gimmicks in favor of clear, reliable coverage.

21.     Both the Narwhal/Reception Ad and the Keytar Ad illustrate how the NO JINGLES OR MASCOTS Campaign's creative approach is expressed in practice. These ads exemplify the NO JINGLES OR MASCOTS Campaign's distinctive expression, tone, and humor, and serve as concrete examples of how NJM communicates its consumer-first substance-over-style message to consumers.

22.     In the Narwhal Ad, a person in a bright blue narwhal costume appears as a would-be "mascot" trying to insert themselves into NJM's advertising, only to be told that NJM does not use mascots and focuses instead on straightforward insurance and customer service.

23.     In the Keytar Ad, when an over-the-top musician with a keytar performs or pitches a catchy jingle-style idea, NJM rejects the gimmicky approach and reiterates that it does not rely on jingles – NJM is instead focused on consumer-first, substance over style messaging. As with the Narwhal spot, the contrast between the flashy character and NJM's plainspoken philosophy is suggestive of the same brand message -- "NO JINGLES OR MASCOTS….".

24.     The commercial spots and advertisements in the NO JINGLES OR MASCOTS Campaign features distinctive dry, observational humor, delivered through understated character-driven scenarios, that juxtapose outlandish, zany characters with calm, composed business professionals, all in an office setting (the" NJM Trade Dress").

25.     Plaintiff owns the following copyright registrations covering the original scripts and video production assets comprising the NO JINGLES OR MASCOTS Campaign, which include the Narwhal Ad and the Keytar (individually or collectively the "Copyrighted Works"):

| | Title | Copyright Reg. No. | Reg. Date |
|---|---|---|---|
| 1. | NJM NO JINGLES OR MASCOTS (Keytar) Commercial Script. | PA0002554450 | 2025-10-14 |
| 2. | NJM NO JINGLES OR MASCOTS or Mascots (Keytar) Commercial. | PA0002554449 | 2025-10-14 |
| 3. | NJM NO JINGLES OR MASCOTS (Narwhal/Reception) Commercial Script. | PA0002554451 | 2025-10-14 |
| 4. | NJM NO JINGLES OR MASCOTS (Narwal/Reception) Commercial. | PA0002554453 | 2025-10-14 |

26.     The Copyrighted Works were independently created by or under the direction of Plaintiff and fixed in a tangible medium of expression. Each Copyrighted Work was produced as part of Plaintiff's advertising initiative to promote its insurance services.

27.     The Copyrighted Works are original and have been duly registered with the United States Copyright Office. Plaintiff holds all exclusive rights associated with and to those registrations.

28.     NJM has invested substantially in creating, promoting, and widely distributing the NO JINGLES OR MASCOTS Campaign, including the Copyrighted Works, service marks, and other of NJM's intellectual property and proprietary rights across TV (including local Super Bowl buys), online video (OLV), Connected TV (CTT), and video advertising via streaming, social media, including Facebook, Instagram, TikTok, radio (terrestrial and digital), billboards, Out-Of-Home (OOH) advertising, targeted Google Ads, print media in New Jersey, Pennsylvania, Connecticut, Maryland and Ohio (the "NJM Markets") through an extensive multi-channel advertising strategy  reaching the mass market of insurance consumers.

29.     NJM's NO JINGLES OR MASCOTS Campaign has generated widespread public awareness, with metrics reflecting billions of views and impressions across television, online, and social media platforms in relevant marketing including in this District. Since its launch, the NO JINGLES OR MASCOTS Campaign has been readily accessible to the public in the jurisdictions

7

where NJM offers insurance d services, ensuring broad and repeated exposure to its NO JINGLES OR MASCOTS JUST GREAT INSURANCE℠ tagline and related messaging.

30.    NJM's widespread use of the NO JINGLES OR MASCOTS Campaign and assets including, but not limited to, NJM's Trade Dress has achieved secondary meaning, such that NJM has a legitimate and proprietary interest in the unique and valuable source indicating information conveyed therein.

## III.    DEFENDANT'S WRONGDOING

31.    Upon information and belief, Defendant is engaged in the business of providing personal and business insurance solutions in Massachusetts, Connecticut, Rhode Island and New Hampshire, specializing in premium and affordable insurance for cars, home or business.

32.    During or around October 2025, Defendant launched and disseminated a series of commercial advertising spots in Connecticut and throughout multiple other states in the United States (the "Infringing Advertising") that copied the original creative concept(s) embodied the NO JINGLES OR MASCOTS Campaign by replicating the structure, tone, and core messaging in the Copyrighted Works to capitalize on NJM's goodwill and substantial investment in developing the NO JINGLES OR MASCOTS Campaign.

33.    By way of illustration, without limitation, a high-level comparison of NJM's Keytar and Narwhal Ads with Defendant's Singer Ad demonstrates that an ordinary observer would conclude that Defendant's copied NJM's NO JINGLES OR MASCOTS Campaign:

8

| NJM's Keytar Ad (30 second spot) https://www.youtube.com/watch?v=B5XIeEr52do<br><br>https://www.youtube.com/watch?v=t2-z2N3eDXw | NJM's Narwhal Ad (30 second spot) https://www.youtube.com/watch?v=ANidN5ptWUw | Defendant's Singer Ad (15 second spot) https://www.facebook.com/arbellainsurance/videos/1323659116010764 |
|---|---|---|
|  |  |  |
| Keytarist: You wanna hear some jingles?<br><br>Receptionist: Oh!<br><br>Keytarist: (singing) Nana-nana-nana NJM.<br><br>Receptionist: At NJM, we believe that great insurance speaks for itself. | Receptionist: Oh..<br><br>Narwhal: Hi, I am here to apply for the mascot position.<br><br>Receptionist: Oh, we don't hire mascots.<br><br>Narwhal: But you're… but you're an insurance company. You gotta have a mascot. | Receptionist: (no dialogue)<br><br>Woman: I'm here for the vocal artist gig. (singing) Arbella will make your policy umbrella. [additional words difficult to make out] |
|  |  |  |
| Keytarist: That's cool, check this out. (singing) NJM, your new best friend. | Receptionist: Yeah, that's not really our thing. I'm so sorry. | Announcer Voice Over: At Arbella, we don't do cheesy jingles. Just great coverage. |

| NJM's Keytar Ad (30 second spot) https://www.youtube.com/watch?v=B5XIeEr52do<br><br>https://www.youtube.com/watch?v=t2-z2N3eDXw | NJM's Narwhal Ad (30 second spot) https://www.youtube.com/watch?v=ANidN5ptWUw | Defendant's Singer Ad (15 second spot) https://www.facebook.com/arbellainsurance/videos/1323659116010764 |
|---|---|---|
| Receptionist: Yeah, no. | Narwhal: Actually, I have an appointment.<br><br>Receptionist: Carl!<br><br>Carl: Yep. Halt! | Because we're here for good. |
|  |  |  |
| Keytarist: Oh how about this one? (singing) NJ-Amazing.<br><br>Security Guard: That was really great!<br><br>Keytarist: Thank you! | Announcer Voice Over: When your insurance speaks for itself…<br><br>Narwhal: They're gonna love me, they're gonna love me!<br><br>Announcer Voice Over: …you don't need gimmicks.<br><br>Narwhal: Ok…I'm the NJM narwhal.<br><br>Carl: I know… | |
|  |  | |
| Security Guard: But, NO | Announcer Voice Over: NO | |

| NJM's Keytar Ad | NJM's Narwhal Ad | Defendant's Singer Ad |
|---|---|---|
| (30 second spot) https://www.youtube.com/ watch?v=B5XIeEr52do<br><br>https://www.youtube.com/ watch?v=t2-z2N3eDXw | (30 second spot) https://www.youtube.com/ watch?v=ANidN5ptWUw | (15 second spot) https://www.facebook.com/ arbellainsurance/videos/ 1323659116010764 |
| JINGLES OR MASCOTS. Just great insurance.<br><br>Keytarist: Ah… (singing) NO JINGLES OR MASCOTS. | JINGLES OR MASCOTS. Just great insurance. NJM. Get a quote today. | |

34.     Defendant's Infringing Singer Ad  uses the same expression to convey their message in a substantially and confusingly similar  manner: a zany character seeks to impose themselves into an insurance company's marketing, only to be rebuffed by a calm and collected company representative who informs them that the company only to be told that the Defendant does not use mascots and focuses instead on straightforward insurance and customer service.

35.     Defendant's Infringing Singer also culminates in the use of the slogan NO CHEESY JINGLES JUST GREAT COVERAGE, which mimics NJM's NO JINGLES OR MASCOTS Mark.

36.     Defendant further compounded its wrongdoing by adopting and using two slogans as service marks that are confusingly similar to NJM's NO JINGLES OR MASCOTS Mark, and/or displayed to consumers in connection with a commercial transaction as follows:  NO CHEESY JINGLES JUST GREAT COVERAGE and NO SILLY MASCOTS JUST GREAT SERVICE (the "Infringing Slogans").

| NJM's Use | Defendant's Use |
|---|---|
|  |  |
| Security Guard: But, NO JINGLES OR MASCOTS. Just great insurance. Keytarist: Ah… (singing) NO JINGLES OR MASCOTS. | Announcer Voice Over: At Arbella, we don't do cheesy jingles. Just great coverage. Because we're here for good. |

37.    Defendant's infringing Singer Ad explicitly says Defendant does not do the "cheesy jingle thing" and urges consumers not to "settle for the song and dance," prompting them to connect with an Arbella agent.

38.    Upon information and belief, Defendant launched its Infringing Ad Campaign on or around October 2025 as a television commercial, digital video advertising and via social media channels, including Facebook, where the video was posted directly to the company's page, and YouTube, where Defendant hosts its advertising content for on-demand viewing.

39.    Upon information and belief, at least as early as November 2025, Defendant commenced use of the NO SILLY MASCOTS JUST GREAT SERVICE on billboards and printed advertising materials in connection to insurance services in Class 36.

12

40.    The following is a true and accurate photograph of Defendant's billboard advertising its insurance services and prominently displaying the Infringing Mark, "No Silly Mascots Just Great Service."



41.    Defendant was aware of and had access to NJM's NO JINGLES OR MASCOTS including but not limited to, the NO JINGLES OR MASCOTS Mark Campaign and the materials comprising it, which were widely disseminated through national advertising and digital media platforms.

42.    Defendant knew or should have known of Plaintiff's trademark rights, including its federally registered, common law, and pending trademarks associated with the NO JINGLES OR MASCOTS Campaign. Despite this knowledge, Defendant nevertheless copied and infringed NJM's rights.

13

43.    Defendant chose to trade upon the appeal and success of NJM'S NO JINGLES OR MASCOTS Campaign, which is fully protected by valid and subsisting copyrights and/or service marks in the United States, purely for its own purpose, agenda and profit, at the expense of NJM, and in disregard of the law.

44.    Accordingly, Defendant's infringing conduct is knowing, willful, in bad faith, and likely to cause confusion and to deceive the public.

45.    On or about early October 2025, NJM learned of Defendant's infringing advertising campaign through publicly available advertisements.

46.    On October 20, 2025, NJM sent a cease-and-desist letter to Defendants objecting to the use of the Infringing Campaign.

47.    Despite repeated requests from NJM, Defendant, through counsel, Defendant has refused or ignored NJM's demands.

48.    As a result of Defendant's unlawful conduct, NJM has suffered and continues to suffer harm to its goodwill, brand reputation, and intellectual property rights.

49.    Defendant's actions have caused or are likely to cause confusion among consumers, and undermined the value of Defendant's original creative Copyrighted Works and substantial investments in the NO JINGLES OR MASCOTS Campaign. Defendant's continued use of the Infringing Campaign, in whole and/or in part, threatens ongoing and irreparable injury to NJM, warranting immediate judicial intervention.

50.    NJM has no adequate remedy at law.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Direct Copyright Infringement – 17 U.S.C. § 501

51.     NJM restates and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

52.     NJM holds the exclusive rights to create or authorize others to create derivative works based on the Copyrighted Works embodied in the NO JINGLES OR MASCOTS Campaign, including the Narwal Ad and the Keytar Ad.

53.     Defendant had access to the Narwhal Ad and the Keytar Ad prior to creation of its unauthorized Infringing Campaign.

54.     Defendant's unauthorized derivative Singer Ad is substantially similar to the Narwhal and Keytar Ads by reason of Defendant's use of the plot, incidents, settings, expression, comedic timing and close paraphrasing of NJM's Mark, NO JINGLES OR MASCOTS JUST GREAT INSURANCE with No Cheesy Jingles Just Great Coverage and No Silly Mascots Just Great Service.

55.     Defendant's unauthorized derivative Singer Ad copies the expression of the Narwhal and Keytar Ads by reason of Defendant's use of the plot, incidents, setting, look and feel, comedic timing, and close paraphrasing of NJM's Mark, NO JINGLES OR MASCOTS JUST GREAT INSURANCE with "No Cheesy Jingles Just Great Coverage" and/or "No Silly Mascots Just Great Service."

56.     Defendant's Singer Ad is an unauthorized derivative work of NJM's Narwhal and Keytar Ads. Defendant has infringed NJM's exclusive copyright interest in its original Copyrighted Works.

15

57.    As a direct and proximate result of Defendant's actions, NJM has been injured in an amount unknown and to be determined by time of trial, by reason of Defendant's intentional and willful acts.

58.    The injury that NJM has suffered and will continue to suffer unless Defendant is enjoyed and restrained is irreparable.

**SECOND CAUSE OF ACTION**
**UNFAIR COMPETITION AND FALSE**
**DESIGNATION OF ORIGIN (FALSE ASSOCIATION) 15 U.S.C. § 1125(a)(1)(A)**

59.    NJM restates and incorporates by reference paragraphs 1 through 58 as if set forth fully herein.

60.    NJM owns enforceable trademark rights in the NO JINGLES OR MASCOTS Mark and other NJM Marks, including without limitation trade dress featured in the NO JINGLES OR MASCOTS Campaign, which are distinctive and have acquired secondary meaning and substantial goodwill through extensive use and promotion in commerce.

61.    The NO JINGLES OR MASCOTS Campaign embodies a distinctive and protectable trade dress. It employs dry, observational humor in understated, character-driven scenarios that consistently juxtapose outlandish, zany characters with calm, composed business professionals. The zany characters personify chaotic, gimmick-driven marketing, while NJM's personnel remain unflappable, professional, and focused, speaking plainly and acting with quiet competence. This deliberate and repeated contrast between exaggerated, attention-seeking antics on the one hand and NJM's cool, steady, customer-first demeanor on the other creates a unique overall look and feel that consumers associate with NJM. The commercial's visual and tonal elements function as NJM's Trade Dress and are thus protectable under NJM's unfair competition and trade dress rights.

62.    Defendant has used the Infringing Slogans which are confusingly similar marks and taglines in commercial advertising and promotion in interstate commerce, including on television, digital video, social media, billboards, and printed materials, in connection with insurance services.

63.    NJM is an established and reputable provider in the insurance industry that has built substantial goodwill and recognition associated with NJM's trademarks, the NJM Trade Dress and its marketing campaign. Rather than developing its own distinctive brand identity, Defendant has intentionally adopted marks and branding that trade on Plaintiff's reputation for putting customers first and providing reliable, high-quality services. Defendant's conduct is likely to cause consumer confusion and deception as to the source, sponsorship, or affiliation of its services, thereby exploiting NJM's goodwill for Defendant's commercial benefit and causing damage to Plaintiff's brand and business relationships.

64.    Defendant's use of its Infringing Slogans and advertising materials constitutes a false designation of origin and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services by NJM.

65.    Defendant is unlawfully passing off its services as those of NJM by using confusingly similar Infringing Slogans that mislead consumers into believing Defendant's services originate with, are affiliated with, or are endorsed by NJM.

66.    NJM has suffered and is likely to continue to suffer actual and imminent harm, including injury to its goodwill, brand reputation, and commercial interests, as a direct and proximate result of Defendant's conduct. By reason of the foregoing, Defendant is liable to Plaintiff for unfair competition and false designation of origin under 15 U.S.C. § 1125(a), and Plaintiff is entitled to damages, injunctive relief, and such other relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT
### NJM'S "NO JINGLES OR MASCOTS" MARK

67.     NJM restates and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

68.     Plaintiff owns valid common law trademarks, including the NO JINGLES OR MASCOTS Mark, which NJM has continuously used in commerce since 2021 in connection with insurance services.

69.     Plaintiff's NO JINGLES OR MASCOTS Mark is distinctive and protectable.

70.     Defendant has used in commerce marks and slogans that are confusingly similar to NJM's NO JINGLES OR MASCOTS Mark, including "No Cheesy Jingles Just Great Coverage" and "No Silly Mascots Just Great Service," in connection with the advertising and sale of insurance services (the "Infringing Slogans").

71.     Defendant's unauthorized use of the Infringing Slogans in the same markets and in connection with similar services is likely to cause confusion, mistakes, or deception among consumers as to the source, sponsorship, or approval of Defendant's services, and has caused actual confusion and harm to NJM's goodwill and reputation.

72.     NJM's use in commerce of its NO JINGLES OR MASCOTS Mark predates Defendant's use of the Infringing Slogans.

73.     Defendant's conduct constitutes trademark infringement in violation of the common law of the State of Connecticut.

74.     Defendant's use and/or advertising of the Infringing Slogans, "No Cheesy Jingles Just Great Coverage" and/or "No Silly Mascots Just Great Service" is likely to cause confusion or mistake among purchasers as to the source of the services and goods with those of NJM.

18

75.     NJM has used in interstate commerce and in Connecticut its NO JINGLES OR MASCOTS Mark for insurance related services prior to Defendant's adoption and use of the Infringing Slogans.

76.     Defendant's deliberate and willful use and/or advertising of the Infringing Slogans "No Cheesy Jingles Just Great Coverage" and/or  "No Silly Mascots Just Great Service" to identify the same, or related insurance services is likely to cause confusion or mistake among the relevant public as to the source and sponsorship of the offerings and such acts of said Defendant constitute common law infringement of Plaintiff's NO JINGLES OR MASCOTS Mark.

77.     By reason of the foregoing, Defendant is liable to NJM for trademark infringement and Plaintiff is entitled to damages, injunctive relief, and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### UNFAIR COMPLETION
(**Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq*.**)

78.      NJM restates and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

79.     NJM is active in the advertising, promotion, and provision of its insurance services under the NO JINGLES OR MASCOTS Mark and adopted and used its NO JINGLES OR MASCOTS Mark in commerce long before Defendant's adoption of the Infringing Slogans. NJM has continuously used the marks in Connecticut and throughout the United States.

80.     The use and/or advertising of the Infringing Slogans by the Defendant is likely to cause confusion or mistake among the relevant public as to the source of the goods and services of the Defendant with those of NJM.

81.     At all relevant times, Defendant is a "person" engaged in trade or commerce within the definition of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA").

82.     Defendant's conduct in using the Infringing Slogans in commerce in the State of Connecticut is immoral, unethical, oppressive, or unscrupulous, and constitutes an unfair and deceptive act or practice under CUTPA.

83.     As a direct result of Defendant's conduct, NJM has suffered an ascertainable loss.

84.     As a direct result of Defendant's conduct, NJM is entitled to an award of its damages, along with an award of punitive damages and its reasonable attorneys' fees and costs.

85.     Defendant's bad faith conduct constitutes unfair competition in violation of Connecticut State common law.

86.     Defendant's above referenced conduct constitutes unfair competition in violation of the common law of the State of Connecticut.

### FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT

87.     NJM restates and incorporates by reference paragraphs 1 through 50 as if set forth fully herein.

88.     Defendant has derived and continues to derive substantial monetary and reputational benefits from its unauthorized use, copying, exploitation, and commercialization of NJM's Copyrighted Works, trademarks, and associated goodwill.

89.     Defendant's benefits include, without limitation, revenues, profits, increased market recognition, customer relationships, and other competitive advantages that Defendant would not have obtained but for its wrongdoing directed at NJM's intellectual property, brand and business reputation and resulting in consumer confusion, diversion of sales, and erosion of the distinctiveness and value of NJM's intellectual property and brand.

20

90.    Based on principles of equity and good conscience Defendant must not be permitted to retain the gains, revenues, and other benefits it has unjustly obtained through its exploitation of NJM's Copyrighted Works, trademarks and associated goodwill.

91.    Accordingly, NJM is entitled to restitution and/or disgorgement of Defendant's unjust enrichment, in an amount to be proven at trial, together with such other and further equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

**I.    Enter judgement declaring that:**

    a.    Defendant is liable for direct copyright in violation of 17 U.S.C. § 501;

    b.    Defendant is liable for unfair competition under 15 U.S.C. § 1125(a)(1)(A);

    c.    Defendant is liable for common law trademark infringement of NJM's No JINGLES OR MASCOTS Mark;

    d.    Defendant is liable for unfair competition under Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq*;

    e.    Defendant has been unjustly enriched at NJM's expense.

**II.    Injunctive Relief**

    a.    Issue an order preliminarily and permanently enjoining Defendant, its subsidiaries, directors, officers, employees, agents, and all other persons or entities acting, by contract or agreement, in concert with it, or on behalf of it, directly or indirectly, from offering, providing, advertising, printing, distributing, selling or in any way making available to the public the Copyrighted Works created by NJM or any derivative work thereof.

21

b.   Order that Defendant destroys all copies of the unauthorized Infringing Campaign that are already out of their possession and/or in circulation.

c.   Preliminarily and permanently enjoin Defendant, its subsidiaries, directors, officers, employees, agents, and all other persons or entities acting, by contract or agreement, in concert with it, or on behalf of it, directly or indirectly, from (i) infringing the NO JINGLES OR MASCOTS Mark; (ii) using the infringing taglines, "No Cheesy Jingles Just Great Coverage" and "No Silly Mascots Just Great Service" in commerce in any fashion, or any other word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff; and (iii) further acts of unfair and deceptive competition.

## III.   Award NJM:

a.   Actual, statutory, and/or compensatory damages in an amount to be determined at trial;

b.   Defendant's profits and such other damages as are available under 15 U.S.C. § 1117(a), in an amount to be determined at trial;

c.    Money damages, punitive damages, attorneys' fees and costs pursuant to the full extent allowed by Connecticut General Statutes § 42-110(g);

d.    Restitution and/or disgorgement of all profits, revenues and other benefits unjustly obtained by Defendant as a result of its wrongful conduct in an amount to be proven at trial;

e.    Pre-and post-judgment interest as permitted by law;

f.    The costs of this action, including reasonable attorneys' fees under 17 U.S.C. § 505 and applicable Connecticut law.

**IV.    Grant such other and further relief as the Court deems just and proper.**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated:   New Haven, Connecticut
March 2, 2026

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY

By:_____
Andy I. Corea – ct25925
acorea@harrisbeachmurtha.com
Harris Beach Murtha Cullina PLLC
265 Church Street
New Haven, CT 06510
Telephone: (203) 772-7700

Tamara Carmichael*
Francelina M. Perdomo Klukosky*
Christie R. McGuinness*
Saul Ewing LLP
1270 Avenue of the Americas, Suite 2800
New York, New York 10020
Telephone: (212) 980-7200
*Pro Hac Motions Forthcoming
Attorneys for Plaintiff